**NOT FOR PUBLICATION**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| In Re: | Case No.: 06-15392-SLM |
| **DOMINICK GALLUZZO,** | CHAPTER 11 |
| Debtor. | |

Order Filed on August 14, 2018
by Clerk, U.S. Bankruptcy
Court - District of New Jersey

**OPINION**

**APPEARANCES:**

Ward W. Benson, Esq.
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 227
Ben Franklin Station
Washington, D.C. 20044
*Counsel for the Internal Revenue Service*

Bruce H. Levitt, Esq.
Levitt & Slafkes, P.C.
515 Valley Street
Suite 140
Maplewood, NJ 07040
*Counsel for Dominick Galluzzo*

Kenneth R. Cohen, Esq.
Davidson, Sochor, Ragsdale & Cohen, LLC
619 River Drive, Suite 200
Elmwood Park, NJ 07047
*Special Counsel to Dominick Galluzzo*

1

David R. Hock, Esq.
Cohen Weiss & Simon, LLP
330 West 42nd Street
New York, NY 10030
*Counsel for Trustees and Fiduciaries of Local 282 Pension Trust Fund,*
*Local 282 Welfare Trust Fund, Local 282 Annuity Trust Fund, &*
*Local 282 Vacation and Sick Leave Trust Fund*

**STACEY L. MEISEL, UNITED STATES BANKRUPTCY JUDGE**

## **INTRODUCTION**

Before the Court is creditor Internal Revenue Service's ("**IRS**") *Motion to Enforce the Chapter 11 Plan and Confirmation Order* ("**Motion to Enforce Plan and Confirmation Order**"). The IRS contends that the priority and amount of its allowed secured tax claim was fixed in a *Stipulation and Order Determining Liens and Priority on Ocean County Property* ("**Stipulation and Order**") between debtor Dominick Galluzzo ("**Debtor**") and his creditors, which was incorporated into the *Order Confirming First Modified Chapter 11 Plan* ("**Confirmation Order**"). According to the IRS, Debtor is evading his obligation to pay the IRS's claim as required by the Confirmation Order, and instead has attempted for years to challenge the underlying tax assessments in various non-bankruptcy courts.   The IRS argues that Debtor nevertheless remains bound to pay the IRS's claim under the Stipulation and Order and the Confirmation Order.   Debtor responds with numerous arguments to explain why he does not have to pay the IRS's claim in spite of the Stipulation and Order and the Confirmation Order.

This Court finds Debtor's arguments unpersuasive and irreconcilable with the procedural history of this case.   Debtor made a deal.   The deal required Debtor to pay the IRS, but it also enabled Debtor to confirm his plan and exit bankruptcy.   The deal was incorporated into the Confirmation Order, entered by this Court.   Years later, with the deadline to pay the IRS approaching, Debtor decided he no longer liked the deal.    Instead of complying with his obligation or coming back to *this* Court to seek relief, he elected to try to undo the deal in any non-bankruptcy forum he could.    In fact, Debtor challenged the IRS's claim in four other courts post-confirmation: the United States Tax Court, the United States Court of Appeals for the Third Circuit (on appeal from the tax court), and twice in the United States District Court for the District of New Jersey.

None of these courts absolved Debtor of his obligation under the Confirmation Order, and the tax court and the District Court each found, among other things, that it lacked jurisdiction to resolve the matter.   However, Debtor managed to find some helpful dicta in each court's decision and ran to the next court with it, hoping for a better result.   Now—the second time Debtor's dispute with the IRS has come before this Court—Debtor contends that this Court must free him of his obligation to pay the IRS based on the tax court's finding relating to jurisdiction.

This case clearly has a long and tortuous history.   In 2015, during the second case Debtor commenced post-confirmation in the District Court for the District of New Jersey, the Honorable Mark Falk, United States Magistrate Judge, said "[a] court somewhere will eventually have to unravel" how the history of this case "impacts the IRS liens in place."[1]   This is that Court.   For the reasons stated below, the IRS's Motion to Enforce Plan and Confirmation Order is GRANTED.

## JURISDICTION AND VENUE

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, 28 U.S.C. § 157(b)(1), and the Standing Order of Reference from the United States District Court for the District of New Jersey dated July 23, 1984 and amended September 18, 2012.   This matter concerns the administration of the bankruptcy estate, as well as a determination of the validity and extent of a lien.   It therefore constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (K) and (O).   Venue is proper under 28 U.S.C. § 1408.   The Court issues the following findings of fact and conclusions of law.

---

[1] *Galluzzo v. United States*, No. CV 15-2201(CCC), 2015 WL 9302375, at *4 (D.N.J. Nov. 4, 2015) ("**Second District Court Case**"), *report and recommendation adopted*, No. CV 15-2201 (CCC-MF), 2015 WL 9311486 (D.N.J. Nov. 30, 2015).   The Court notes that, although Debtor submitted a copy of the Third Circuit's published opinion resolving the IRS's appeal of the tax court decision (discussed *infra*), the parties did not provide copies of the tax court decision or the district court Reports and Recommendations.   This Court nevertheless took the liberty of finding and reviewing the tax court decision and the district court Reports and Recommendations, as they are an important part of this case's lengthy history and implicated in the resolution of this matter.

## BACKGROUND

### *Debtor Files for Bankruptcy*

The pertinent facts are largely undisputed.   On June 15, 2006, Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**").[2]   Schedule A indicated that Debtor held an interest in two pieces of real property: 145 Nedellec Drive, Saddle Brook, New Jersey 07663 (the "**Saddle Brook Property**"), and 1 Seventh Avenue, Ortley Beach, New Jersey 08735 (the "**Ortley Beach Property**").[3]   On Schedule D, Debtor listed the IRS as a secured creditor with a disputed claim of $1,000,000.00.[4]   On June 29, 2006, the IRS filed a proof of claim in the amount of $1,268,527.08.[5]   On September 5, 2006, the IRS filed an amended proof of claim in the amount of $1,277,495.57.[6]   The total amended claim consisted of: (1) a $1,255,211.34 secured claim for tax years 1999, 2000, 2001 and 2003; (2) a $17,188.62 priority claim for tax year 2004; and (3) a $5,095.61 general unsecured claim.[7]

On July 27, 2006, Debtor initiated an adversary proceeding against creditor Lumbermens Mutual Casual Company seeking to avoid a lien on the Ortley Beach Property (the "**Adversary Proceeding**").[8]   On February 7, 2007, Debtor amended his complaint to add counts seeking to fix the extent, validity and priority of the alleged liens of, among others, the IRS, as well as Theodore King and Larry LaBarberra as Trustees and Fiduciaries of Local 282 Trust Funds, the Local 282 Welfare Trust Fund, the Local 282 Annuity Trust Fund, the Local 282 Job Training Trust Fund and the Local 282 Vacation and Sick Leave Trust Fund (collectively, the "**Local 282 Trust**

---

[2] (Docket No. 1).   All citations to the record are to Case No. 06-15392 ("**Main Case**") unless otherwise indicated.
[3] (Docket No. 15 at 3).
[4] (*Id.* at 8).
[5] (Claims Register, Proof of Claim No. 2-1).
[6] (Claims Register, Proof of Claim No. 11-1).
[7] (*Id.* at 1).
[8] (Adv. Pro. 06-02238-DHS, Docket No. 1).

Funds").[9]  In the amended complaint, Debtor asserted the bankruptcy court had jurisdiction over the Adversary Proceeding under 28 U.S.C. §§ 157 and 1334 and that the Adversary Proceeding was a core proceeding under 28 U.S.C. § 157(b)(2)(F), (K) & (O).[10]

In the amended complaint, Debtor specifically requested that the bankruptcy court fix the extent, validity and priority of the IRS's liens.[11]   Debtor alleged, among other things, that:

> 55. The federal tax liens are subordinate in priority to real property taxes, the mortgage of Mariners Bank and the executions and levies of defendants, Lumbermens Mutual Casualty Company and Herrick, Feinstein, LLP and, to the extent those liens are avoided by the debtor and preserved for the estate, the debtor.

> 56. The federal tax liens are a secured claim to the extent of the value of the property of the debtor on the date of filing, after credit for the superior liens.[12]

On March 14, 2007, while the Adversary Proceeding was pending, Debtor filed his First Modified Chapter 11 Plan (the "**Plan**").[13]   The Plan included a subsection entitled "Procedures for Resolving Contested Claims", which provided that:

> Objections to Claims and interests, except for those Claims more specifically deemed Allowed in the Plan, may be filed by the Reorganized debtor or any party in interest up to and including sixty (60) days following the entry of the Confirmation Order.[14]

The Plan defined the term "Allowed" as follows:

> **Allowed** when used as an adjective preceding the words "Claims" or "Equity Interest", shall mean any Claim against or Equity Interests of the debtor, proof of which was filed on or before the date

---

[9] (Adv. Pro. 06-02238-DHS, Docket No. 13).

[10] (*Id.*, ¶ 2).  28 U.S.C. § 157(b)(2)(F) is "proceedings to determine, avoid, or recover preferences".  28 U.S.C. § 157(b)(2)(K) is "determinations of the validity, extent, or priority of liens".  Finally, 28 U.S.C. § 157(b)(2)(O) is "other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims".

[11] (*Id.*, Count VII, ¶ 57).

[12] (*Id.*, Count VII, ¶¶ 55–56).

[13] (Docket No. 62).

[14] (*Id.* at 14).

designated by the Bankruptcy Court as the last date for filing proofs
of claim or Equity Interest against such debtor . . . .[15]

The Plan expressly addressed the IRS's secured claim in the subsection entitled "Classes

of Secured Claims."   Specifically, the Plan provided that the "Internal Revenue Service Federal

tax lien on Ortley Beach and Saddle Brook properties" was "to remain on Ortley Beach and Saddle

Brook properties up to the equity in those properties after liens of classes 1, 2, 3 and 4 creditors."[16]

In the subsection entitled "Retention of Jurisdiction," the Plan provided:

> The Court shall retain jurisdiction of this case pursuant to the
> provisions of Chapter 11 of the Bankruptcy Code, pending the final
> allowance or disallowance of all Claims affected by the Plan, and to
> make such orders as are necessary or appropriate to carry out the
> provision of this Plan.
>
> In addition, the Court shall retain jurisdiction to implement the
> provisions of the Plan in the manner as provided under Section 1142,
> sub-paragraphs (a) and (b) of the Bankruptcy Code.   If the Court
> abstains from exercising, or declines to exercise jurisdiction, or is
> otherwise without jurisdiction over any matter set forth in this
> Section, or if the Debtor or the reorganized debtor elect to bring an
> action or proceeding in any other forum, then this Section shall have
> no effect upon and shall not control, prohibit or limit the exercise of
> jurisdiction by any other court, public authority or commission
> having competent jurisdiction over such matters.[17]

On February 25, 2008, the Honorable Donald H. Steckroth, United States Bankruptcy

Judge, entered the Stipulation and Order resolving the Adversary Proceeding.[18]   Although the

"Whereas" clauses in the Stipulation and Order focused on the dispute about the relative priorities

---

[15] (*Id.* at 2).

[16] (*Id.* at 10).

[17] (*Id.* at 13).

[18] (Adv. Pro. 06-02238-DHS, Docket No. 48).   Debtor's bankruptcy case was assigned to Judge Steckroth until Judge
Steckroth retired in 2015.

of the IRS's and Local 282 Trust Funds' liens,[19] the Stipulation and Order's numbered paragraphs in fact determined the defendants' liens and priority on the Ortley Beach Property between the IRS, the Local 282 Trust Funds, and the other defendants.

The Stipulation and Order provided:

> 2. The lien claims of Lumbermans and Herrick shall remain as valid secured claims on the property in the amounts of the respective judgments, with interest accruing.

> 3. The Ortley Beach Tax Collector has a secured Claim on the [Ortley Beach] Property which will be paid within 30 days under the proposed plan of reorganization.

> 4. The Trustees shall have a lien that will remain on the [Ortley Beach] Property in the amount of $200,000, which shall be paid in full as a secured claim pursuant to any plan of reorganization or in any liquidation.[20]

With respect to the IRS's claim, Stipulation and Order provided:

> 5. The IRS tax lien claim shall be reduced by $200,000 and the IRS shall retain its lien for any remaining balance on its secured claim after deduction of the lien claims of Lumbermens [sic], Herrick, the Ortley Beach Tax Collector on the [Ortley Beach] Property, which shall be paid as a secured claim pursuant to any plan of reorganization or in any liquidation.

> 6. To the extent the IRS secured claim is not satisfied from the [Ortley Beach] Property, it shall remain on the other real property owned by the debtor in Saddle Brook, New Jersey up to the value of that property, in its order of priority and pursuant to any plan of reorganization or in any liquidation.[21]

---

[19] The Stipulation and Order included the following "Whereas" clauses:
>   WHEREAS, the [Local 282 Trust Funds] and the IRS respectively filed Answers to the Amended Complaint alleging that their liens were valid and there was, therefore, a dispute as to whether the IRS's or the [Local 282 Trust Funds'] lien has priority; and
>   . . .
>   WHEREAS, the IRS and the [Local 282 Trust Funds] wish to resolve the dispute over the priority of the liens on the [Ortley Beach] Property amicably.
(*Id.* at 2).

[20] (*Id.* at 2–3).

[21] (*Id.* at 3).

Counsel for Debtor, counsel for the IRS, and counsel for Local 282 Trust Funds each signed the Stipulation and Order.[22]

On March 28, 2008, just one month after the entry of the Stipulation and Order, Judge Steckroth held a confirmation hearing on Debtor's proposed Plan.[23]   Debtor's counsel, Local 282 Trust Funds' counsel, the Office of the United States Trustee's counsel, and one other creditor's counsel appeared at the confirmation hearing.[24]   The IRS's counsel did not attend.[25]   During the confirmation hearing, Debtor's counsel made the following statement on the record:

> But again, the testimony will be — and part of the issue, Your Honor, there are ongoing discussions as we speak with the IRS, with regard to the amount of their secured claim.   It's expected that that will be wrapped up.   I was hoping certainly by today, but I don't want to delay confirmation for that.   It's hopeful that that will be wrapped up within the next month or two.   Once we know what the IRS number is, there is $800,000 — the Ortley Beach property is worth approximately $800,000.   That property will be refinanced, and those claims will be paid off in full.[26]

Later the same day, Judge Steckroth entered the Confirmation Order.[27]   The Confirmation Order provided, *inter alia*:

> [T]he secured claim of the Internal Revenue Service and Theodore King and Gary La Barbara as Trustees and Fiduciaries of Local 282 Pension Fund etc. are to be treated as set forth in the Stipulation and Order entered by this court in Adversary Proceeding No. 06-2238 on February 25, 2008, said liens to be paid within six years of the date of assessment of the Internal Revenue Service tax lien . . . .[28]

The case closed on May 3, 2010.   At no point after the entry of the February 25, 2008 Stipulation and Order or the March 28, 2008 Confirmation Order, or before the Court closed the

---

[22] (*Id.* at 4).
[23] (*See* Docket Nos. 152, 207).
[24] (Docket No. 207 at 1).
[25] (*Id.*)
[26] (*Id.* at 7–8).
[27] (Docket No. 153).
[28] (*Id.* at 2).

case on May 3, 2010, did Debtor further challenge the IRS's claim or seek to amend or vacate the

Stipulation and Order or Confirmation Order.

**_Post-Confirmation, Debtor Sues the IRS in Multiple Courts to Have His Tax Assessments Abated and Penalties Discharged_**

### A.  The First District Court Case

On March 22, 2011, several years after the entry of the Confirmation Order and

approximately seven months before Debtor's deadline to pay the IRS's claim under the terms of

the Confirmation Order, Debtor and his wife Angela Galluzzo ("**Mrs. Galluzzo**") (collectively,

"**the Galluzzos**") filed a five-count complaint against the IRS in the United States District Court

for the District of New Jersey seeking a determination that the IRS's assessments for tax years

1999 through 2001 should be abated and the penalties assessed for those years discharged (the

"**First District Court Case**").[29]   Counts One, Two, and Three alleged that the IRS erroneously

assessed the tax, interest and penalties for tax years 1999–2001.[30]   Count Four alleged the IRS

failed to provide the Galluzzos with a notice of deficiency for tax years 1999–2001 and failed to

timely assess the taxes.[31]   Lastly, Count Five alleged that the IRS's claim for the tax assessments

was dischargeable in the Galluzzos' 2006 bankruptcy proceedings.[32]   Importantly, the IRS's

claims in Debtor's bankruptcy case included the 1999–2001 tax years.[33]

The IRS moved to dismiss the first four Counts for lack of subject matter jurisdiction.   The

IRS moved to dismiss Count Five on the ground that the tax dispute was not properly before the

---

[29] *See Galluzzo v. U.S.*, No. CIV.A. 11-1607 CCC, 2012 WL 2005434, at *1 (D.N.J. May 15, 2012) ("**First District Court Case**"), *report and recommendation adopted*, No. 11-CV-1607 CCC, 2012 WL 1949664 (D.N.J. May 30, 2012).

[30] *Id.*

[31] *Id.*

[32] *Id.*   There is nothing in the record before this Court to support the Galluzzos' assertion in the First District Court case that Mrs. Galluzzo was also a debtor in bankruptcy in 2006.

[33] (*See* Proofs of Claim Nos. 2-1 and 11-1).

district court because it was a core proceeding referred to the bankruptcy court and the Galluzzos never filed a motion to withdraw the reference.[34]   The Galluzzos responded that they could not have challenged the deficiency within the 90-day statutory period to do so; therefore, the district court had subject matter jurisdiction based on equitable principles.[35]   The Galluzzos did not object to dismissal of the Fifth Count.[36]

On May 15, 2012, the Honorable Joseph A. Dickson, United States Magistrate Judge, issued a *Report and Recommendation* to dismiss the matter.[37]   Judge Dickson observed that, under 28 U.S.C. § 1346(a)(1), the Galluzzos must have paid the taxes at issue and filed a claim for refund or credit in order for the district court to have jurisdiction to determine the validity of the tax assessments.[38]   The Galluzzos conceded they had not paid the taxes.[39]   Judge Dickson found that jurisdiction might nevertheless exist, however, if the Galluzzos demonstrated: (1) there were no circumstances under which the IRS could prevail; (2) the Galluzzos' alternative remedies were inadequate; and (3) the Galluzzos would suffer irreparable harm absent an injunction.[40]

Judge Dickson found that the Galluzzos did have an adequate alternative remedy because they "[could] file a petition with the Tax Court challenging the validity of the notice of deficiency, and the Tax Court, in the process of ascertaining its own jurisdiction, can determine whether a valid notice was issued[.]"[41]   Judge Dickson continued that "if the Tax Court rules in favor of [the Galluzzos], it effectively voids the assessment."[42]   Thus, Judge Dickson concluded the district

---

[34] First District Court Case, 2012 WL 2005434 at *4.
[35] *Id.* at *2.
[36] *Id.* at *4.
[37] *Id.*
[38] *Id.* at *2.
[39] *Id.*
[40] *Id.* at *3.
[41] *Id.* at *4.
[42] *Id.*

court lacked jurisdiction over the first four Counts of the complaint and recommended that the IRS's motion to dismiss be granted.[43]   On May 30, 2012, the district court granted the IRS's motion to dismiss.[44]

### B.  The Tax Court Petition

On May 21, 2012, while the First District Court Case was still pending but after Judge Dickson issued the *Report and Recommendation*, the Galluzzos filed a petition for redetermination of tax deficiencies in the United States Tax Court.[45]   The IRS again moved to dismiss, arguing the tax court lacked jurisdiction because the Galluzzos' petition was not timely filed within 90 days of the date the IRS mailed the notice of deficiency, as required under the Internal Revenue Code.[46]   The Galluzzos responded they never received the notices of deficiency for tax years 1999 through 2001.[47]

On May 30, 2013, the tax court issued a *Memorandum Opinion* dismissing the matter for lack of jurisdiction.[48]   The tax court determined that it lacked jurisdiction regardless of which party's position prevailed.   In a footnote, the tax court observed that if the Galluzzos' petition was untimely, the IRS could assess the deficiencies and the Galluzzos would have to pay the tax, file a claim for refund with the IRS, and sue for a refund if the claim was denied.[49]  The footnote continued that, on the other hand, "[if the Galluzzos'] position is sustained, the notice of deficiency is a nullity, and respondent may not assess the deficiencies or additions to tax, under normal

---

[43] *Id.*

[44] *See Galluzzo v. U.S.*, No. 11-CV-1607 CCC, 2012 WL 1949664, at *1 (D.N.J. May 30, 2012) (adopting Judge Dickson's May 15, 2012 Report and Recommendation).

[45] *Galluzzo v. Comm'r of Internal Revenue*, No. 12914-12, 2013 WL 2359475, at *1 (T.C., May 30, 2013).

[46] *Galluzzo v. Comm'r of Internal Revenue*, 2013 WL 2359475 at *1.

[47] *Id.*

[48] *Id.* at *2.

[49] *Id.* at *1 n.3.

**NOT FOR PUBLICATION**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| In Re:<br><br>**DOMINICK GALLUZZO,**<br><br>              Debtor. | Case No.: 06-15392-SLM<br><br>CHAPTER 11<br><br>**Order Filed on August 14, 2018**<br>**by Clerk, U.S. Bankruptcy**<br>**Court - District of New Jersey** |

**OPINION**

**APPEARANCES:**

Ward W. Benson, Esq.
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 227
Ben Franklin Station
Washington, D.C. 20044
*Counsel for the Internal Revenue Service*

Bruce H. Levitt, Esq.
Levitt & Slafkes, P.C.
515 Valley Street
Suite 140
Maplewood, NJ 07040
*Counsel for Dominick Galluzzo*

Kenneth R. Cohen, Esq.
Davidson, Sochor, Ragsdale & Cohen, LLC
619 River Drive, Suite 200
Elmwood Park, NJ 07047
*Special Counsel to Dominick Galluzzo*

Honorable Stacey L. Meisel
United States Bankruptcy Judge

1

specifically found that "**[Debtor's] assertion in the Tax Court that he never received a mailed notice of deficiency does appear to be a belated attempt to dodge his tax debt** based on what the Commissioner essentially describes as a technicality." [58]    However, the Third Circuit continued that jurisdiction is not a mere technicality and must exist for a federal court to adjudicate a case.[59]    Therefore, the Third Circuit found that the tax court was correct in determining it had no jurisdiction notwithstanding the IRS's invocation of *res judicata* and notwithstanding that Debtor never raised the notice argument in the bankruptcy case.[60]

### D.  The Second District Court Case

On March 27, 2015, after the IRS refused a request from the Galluzzos to remove its liens, the Galluzzos again filed another complaint in the United States District Court.  This time, the Galluzzos sought an injunction ordering the IRS to release its liens and requesting damages for the IRS's failure to do so (the "**Second District Court Case**").[61]    As Judge Dickson did in the First District Court Case, Judge Falk issued a *Report and Recommendation* recommending dismissal for lack of subject matter jurisdiction.[62]    Specifically, Judge Falk found that the Galluzzos failed to exhaust their administrative remedies before bringing their claim for damages, which is a prerequisite to the district court obtaining subject matter jurisdiction.[63]    Further, Judge Falk found that the Galluzzos failed to allege a basis for federal jurisdiction over their claim seeking release of the IRS's lien.[64]    The district court adopted Judge Falk's recommendation and dismissed the case without prejudice.[65]

---

[58]  *Id.* (emphasis added).

[59]  *Id.*

[60]  *Id.* at 660.

[61]  Second District Court Case, 2015 WL 9302375 at *3, *4.

[62]  *Id.* at *6.

[63]  *Id.*

[64]  *Id.*

[65]  *Galluzzo v. U.S.*, No. CV 15-2201 (CCC-MF), 2015 WL 9311486, at *1 (D.N.J. Nov. 30, 2015).

Thus, by this point, both the tax court (affirmed by the Third Circuit) and the district court found they lacked subject matter jurisdiction over Debtor's post-confirmation challenge to the IRS's claim.

### *The IRS's Motion to Enforce Plan and Confirmation Order*

On April 25, 2016, the IRS filed a motion to reopen Debtor's bankruptcy case and the Motion to Enforce Plan and Confirmation Order.[66]   Debtor filed opposition, alleging that both the Motion to Enforce Plan and Confirmation Order and the IRS's claim should be "dismiss[ed]" because the tax court determined the tax was improperly assessed and Debtor never received a valid notice of deficiency.[67]   Debtor argued the Stipulation and Order did not fix the amount of the IRS's claim and that that bankruptcy court never rendered a decision on the merits of his tax liability because plan confirmation is not a distinct proceeding to determine a non-dischargeable tax liability.[68]   Debtor contended the following statements made by his attorney at the confirmation hearing support the conclusion that the amount of the IRS's claim was still undetermined at that time:[69]

> But again, the testimony will be – and part of the issue, Your Honor, there are ongoing discussions as we speak with the IRS, with regard to the amount of their secured claim.   It's expected that that will be wrapped up.   I was hoping certainly by today, but I don't want to delay confirmation for that.   It's hopeful that that will be wrapped up within the next month or two.   Once we know what the IRS number is, there is $800,000 – the Ortley Beach property is worth approximately $800,000.   That property will be refinanced, and those claims will be paid off in full.[70]

---

[66] (Docket Nos. 197, 198).
[67] (Docket No. 200-1 at 1, 4, 10).
[68] (*Id.* at 3–4, 7–8).
[69] (*Id.* at 4).
[70] (*Id.*) (emphasis omitted).

According to Debtor, this proves that he and the IRS were still in the process of determining the amount of the IRS's claim when the Plan was confirmed and supports the conclusion that there was no final determination of the IRS's claim under the Plan.[71]   In addition, Debtor argued he "should not be precluded from challenging the [IRS's] claim where there were no factual findings as to whether the tax assessment was enforceable", citing IRS Revenue Ruling 2006-16.[72]

The IRS replied, asserting that the Stipulation and Order and the Confirmation Order are *res judicata* as to the validity and amount of the IRS's claim.[73]   The Local 282 Trust Funds also responded to the Motion to Enforce Plan and Confirmation Order, taking no position on the amount of the IRS claim but asking the Court to compel Debtor to comply with the terms of his Plan and pay his creditors.[74]

The Court held oral argument.   The parties agreed that the IRS initially held a tax lien against each of the Galluzzos but that, at some point, the IRS released its tax lien against Mrs. Galluzzo.[75]   The IRS's counsel argued that the IRS abated the lien against Mrs. Galluzzo because it did not have a *res judicata* defense as to her, whereas it believed it possessed a *res judicata* defense as to Debtor based on the Stipulation and Order and the Confirmation Order.[76]   Debtor argued that *res judicata* could not apply to him because it did not affect all parties to the dispute, *i.e.*, Mrs. Galluzzo.[77]   In addition, Debtor contended that, notwithstanding the Confirmation Order, his counsel's statements at the confirmation hearing suggested that the amount of the IRS's claim had yet to be determined.[78]

---

[71] (*Id.*)

[72] (*Id.* at 8).

[73] (Docket No. 201 at 10).

[74] (Docket No. 202 at 2).

[75] (*See* Docket No. 209 at 10, 38).

[76] (*Id.* at 10).

[77] (*Id.* at 38–39).

[78] (*See id.* at 23–24).

At the end of oral argument, the Court ordered the parties to submit supplemental briefing on the following issues: (1) whether *res judicata* applied, since Mrs. Galluzzo was not a party to Debtor's bankruptcy case and the Adversary Proceeding; (2) whether the secured portion of the IRS's claim could be challenged post-confirmation; (3) why Debtor's counsel's statements at the confirmation hearing were relevant, in light of the existence of the Confirmation Order; and (4) whether Debtor had to challenge the IRS's claim within a certain period of time.[79]   On June 2, 2016, this Court entered an Order granting the IRS's motion to reopen the case.[80]

Debtor subsequently filed his post-hearing brief.[81]   Debtor only addressed one of the issues the Court asked the parties to address: whether he had to challenge the IRS's claim within a certain time.   To that, Debtor responded there was no applicable statute of limitations that prevented him from challenging the IRS's claim.[82]   Instead of addressing the Court's remaining requests, Debtor raised new arguments.   For example, Debtor contended that the IRS's argument that the Confirmation Order is *res judicata* on the amount and validity of the IRS's claim is itself barred by *res judicata* because the Third Circuit found the Confirmation Order had no *res judicata* effect on the tax court.[83]   Debtor also argued that, assuming the Confirmation Order was a decision on the merits of the IRS's claim, the Confirmation Order and its allowance of the IRS's claim is void under Federal Rule of Civil Procedure 60(b)(4) because (a) the IRS never properly assessed the underlying tax liabilities, and (b) "the Bankruptcy Court did not have subject matter jurisdiction over the United States for the same reasons as set forth in the Tax Court's ruling", *i.e.*, the IRS

---

[79] (*Id.* at 46–47).
[80] (Docket No. 203).
[81] (Docket No. 211).
[82] (*Id.* at 13).
[83] (*See id.* at 3-7).

failed to show it issued deficiency notices to the Galluzzos.[84]   In support, Debtor quoted the footnote in the tax court decision stating that the IRS's failure to issue a valid notice of deficiency would render the notice of deficiency "a nullity, and [the IRS] may not assess the deficiencies or additions to tax, under normal circumstances, unless a valid notice of deficiency is issued."[85] Debtor conceded that he never objected to the IRS's claim in the original bankruptcy proceeding.[86] However, Debtor asserted that parties cannot consent to subject matter jurisdiction where none exists.[87]   Finally, Debtor argued that *res judicata* did not apply because there was no final judgment on the merits of the IRS's claim.[88]

The IRS thereafter filed its response.[89]   The IRS argued, among other things, that: (1) the fact that Mrs. Galluzzo was jointly liable for the tax assessment but could not be bound by the *res judicata* effect of the Plan did not prevent *res judicata* from applying to Debtor; (2) Debtor's counsel's statements at the confirmation hearing are extrinsic evidence that should not be used to contradict the Confirmation Order and Plan, but if used, should be viewed in the IRS's favor since Debtor's counsel actually represented that the IRS's claim would be paid in full; (3) Debtor's argument that the Third Circuit's rejection of the IRS's *res judicata* argument on appeal from the tax court prevents the IRS from raising a *res judicata* argument here is without merit; (4) Rule 60(b)(4) is inapplicable because the bankruptcy court had subject matter jurisdiction over the IRS's claim when it entered the Confirmation Order, and further, Debtor "failed to offer a serious answer

---

[84] (*See id.* at 7-13).   As will be discussed further, Debtor's jurisdiction argument—that this Court does not have *subject matter jurisdiction* over the *IRS*—makes no sense and appears to conflate subject matter jurisdiction with personal jurisdiction.   *See* JURISDICTION, Black's Law Dictionary (10th ed. 2014) (compare definition of "subject-matter jurisdiction" with definition of "personal jurisdiction").   However, the Court will interpret Debtor's argument to allege a lack of subject matter jurisdiction over the IRS's claim.

[85] (*Id.* at 9).

[86] (*Id.* at 11).

[87] (*Id.*)

[88] (*See* Docket No. 211 at 14-19).

[89] (Docket No. 213).

to the Court's question as to whether there was any time bar to challenging the [IRS's] allowed

secured claim"; and (5) the Confirmation Order is *res judicata* on the issue of the amount of the

IRS's claim because it is a final judgment on the merits.[90]

## DISCUSSION

### A. The Bankruptcy Court's Jurisdiction

Much to this Court's surprise, both because of the substance and the untimeliness, Debtor

raised post-hearing the new argument that the bankruptcy court lacked jurisdiction over the IRS

for the same reason the tax court found it had no jurisdiction—*i.e.*, because the IRS failed to prove

it sent notices of deficiency to Debtor.[91]    According to Debtor, this renders the Confirmation

Order void pursuant to Rule 60(b)(4).[92]    Debtor's jurisdictional challenge, for which he relies on

a footnote in the tax court decision, comes more than eight years after he and the IRS voluntarily

resolved their dispute over the IRS's claim and incorporated that resolution into the Confirmation

Order.    Debtor's argument, which consists of conclusory statements and citations to cases without

adequate analysis, forces this Court to do the work of figuring out whether there is any support for

Debtor's position.

The Court begins by recognizing that Debtor's jurisdiction argument—that this Court lacks

subject matter jurisdiction *over the IRS*—makes no sense and appears to conflate subject matter

jurisdiction with personal jurisdiction.    Indeed, Black's Law Dictionary defines "subject-matter

jurisdiction" as "[j]urisdiction over *the nature of the case and the type of relief sought*; the extent

to which a court can rule on the conduct of persons or the status of things."[93]    In contrast, Black's

---

[90] (*See id.* at 5–16).

[91] (Docket No. 211 at 10).

[92] (*See id.*)

[93] JURISDICTION, BLACK'S LAW DICTIONARY (10th ed. 2014) (emphasis added).

Law Dictionary defines "personal jurisdiction" as "[a] court's power to bring *a person* into its adjudicative process; jurisdiction over *a defendant's personal rights*, rather than merely over property interests."[94]   The Court could simply reject Debtor's jurisdictional argument out of hand. However, and while the Court is always hesitant to opine on more than what is squarely before it, Debtor raised the issue of subject matter jurisdiction (albeit incorrectly).   So, the Court will interpret Debtor's argument to allege that this Court lacks subject matter jurisdiction over the IRS's claim and not just over "the IRS", as Debtor argued in his post-hearing brief.

"As with all courts, courts in bankruptcy must satisfy themselves of subject matter jurisdiction."[95]   Congress has divided bankruptcy proceedings into three categories: (1) those that arise under Title 11, *i.e.*, the Bankruptcy Code; (2) those that arise in a Title 11 case; and (3) those that are related to a case under Title 11.[96]   Under 28 U.S.C. § 1334, the district courts have original and exclusive jurisdiction over all cases arising under the Bankruptcy Code.[97]   The district courts have original but not exclusive jurisdiction over all civil proceedings arising under, arising in or related to cases under the Bankruptcy Code.[98]   28 U.S.C. § 157(a) expressly allows a district court to refer any bankruptcy cases, *i.e.*, "any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11," to the bankruptcy judges for the district.[99]   The United States District Court for the District of New Jersey has done so through a Standing Order of Reference dated July 23, 1984 and amended September 18, 2012.[100]

---

[94]  *Id.* (emphasis added).
[95]  *In re Mullarkey*, 536 F.3d 215, 220 (3d Cir. 2008).
[96]  *See Stern v. Marshall*, 564 U.S. 462, 473 (2011).
[97]  28 U.S.C. § 1334(a).
[98]  28 U.S.C. § 1334(b).
[99]  28 U.S.C. § 157(a).
[100]  Standing Order of Reference 12-1 (D.N.J. Sep. 18, 2012).

A proceeding "arises under" Title 11 if the claims asserted in the matter are predicated on a right created or determined by title 11.[101]    In contrast, proceedings that "arise in" a case under Title 11 includes various administrative matters "that are found only in a bankruptcy and which do not exist outside of a bankruptcy case."[102]    Lastly, "related-to" jurisdiction exists when "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy."[103]

If a final judgment or order is entered without jurisdiction, Federal Rule of Civil Procedure 60(b)(4) provides an avenue for a party to obtain relief.    Specifically, subsection (b)(4) allows a court to relieve a party or its legal representative from a final judgment, order, or proceeding if the judgment is void.[104]    However, a judgment is not void simply because it is or may have been erroneous.[105]    As the Supreme Court stated in *United Student Aid Funds, Inc. v. Espinosa*, "Rule 60(b)(4) applies only in the rare instance where a judgment is premised either on a certain type of jurisdictional error or on a violation of due process that deprives a party of notice or the opportunity to be heard."[106]

### 1. Analysis

Debtor does not, nor can he, argue that he was in any way deprived of due process.    Rather, he argues that the Confirmation Order is void because the bankruptcy court lacked subject matter jurisdiction over the IRS's claim for the same reason the tax court found it lacked jurisdiction—

---

[101]    *In re Marcus Hook Dev. Park, Inc.*, 943 F.2d 261, 267 (3d Cir. 1991); *In re Mid-Atlantic Handling Sys., LLC*, 304 B.R. 111, 119 (Bankr. D.N.J. 2003) (Steckroth, J.).

[102]    *Marcus Hook Dev. Park*, 943 F.2d at 267; *Mid-Atlantic Handling Sys.*, LLC, 304 B.R. at 119.

[103]    *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984), *overruled in part on other grounds by Things Remembered, Inc. v. Petrarca*, 516 U.S. 124 (1995) *as recognized in Nuveen Mun. Tr. ex rel. Nuveen High Yield Mun. Bond Fund v. WithumSmith Brown, P.C.*, 692 F.3d 283, 293 (3d Cir. 2012).

[104]    Fed. R. Civ. P. 60(b)(4).

[105]    *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 270 (2010).

[106]    *Id.* at 271.

because the IRS cannot prove it sent notices of deficiency to Debtor.[107]    Debtor fails to cite to any

law suggesting that the IRS's alleged failure to send a debtor deficiency notices deprives this Court

of jurisdiction over the IRS's claim.    While it appears that the Internal Revenue Code requires the

IRS to prove that it sent Debtor deficiency notices for the tax court to obtain jurisdiction over the

dispute,[108] the Bankruptcy Code imposes no such requirement on this Court.    Rather, 28 U.S.C.

§ 1334, made applicable through 28 U.S.C. § 157(a) and the District Court's Standing Order of

Reference, governs this Court's jurisdiction.[109]

This proceeding does not arise under the Bankruptcy Code because the IRS's claim is not

predicated on a right created or determined by Title 11.[110]    However, proceedings "arising in" a

case under title 11 include various administrative matters "found only in a bankruptcy and which

do not exist outside of a bankruptcy case."[111]    The bankruptcy claims allowance process arises

only in the context of a bankruptcy case.[112]    The IRS voluntarily submitted to the bankruptcy

court's jurisdiction by filing its amended proof of claim.    Debtor then commenced an Adversary

Proceeding asking the Court to fix the extent, validity and priority of the IRS's lien, explicitly

alleging that this Court has jurisdiction under 28 U.S.C. §§ 157 and 1334.[113]    Therefore, consistent

with Debtor's prior allegations and contrary to his present position, this Court has jurisdiction over

the IRS's claim.

---

[107] (Docket No. 211 at 10).

[108] *Delman v. Comm'r of Internal Revenue*, 384 F.2d 929, 934 (3d Cir. 1967) ("[U]nless a notice of deficiency is mailed to the taxpayer *the Tax Court* may not acquire jurisdiction over the cause.") (emphasis added).

[109] *See* 28 U.S.C. § 157(a); Standing Order of Reference 12-1.

[110] *See Mid-Atlantic Handling Sys.*, 304 B.R. at 119.

[111] *Marcus Hook Dev. Park*, 943 F.2d at 267; *Mid-Atlantic Handling Sys.*, 304 B.R. at 119.

[112] *In re Exide Techs.*, 544 F.3d 196, 207 (3d Cir. 2008).

[113] (*See* Adv. Pro. 06-02238-DHS, Docket No. 13, ¶ 2).

Debtor conceded that he never objected to the IRS's claim in the original proceedings.[114]

Indeed, the Third Circuit specifically found that "**[Debtor's] assertion in the Tax Court that he**

**never received a mailed notice of deficiency does appear to be a belated attempt to dodge his**

**tax debt** . . . ."[115]    At least one recent case rejected a similar, belated jurisdictional challenge to a

consensual resolution of a tax claim in the bankruptcy court, albeit in a reversal of roles from the

parties in this case.

In *In re Brothers Materials Ltd.*, two brothers owned a business that filed for Chapter 11

bankruptcy.[116]    The brothers' individual tax liabilities to the IRS were secured by real property

owned by the brothers, not the debtor.[117]    In an indirect effort to collect on the brothers' debt, the

IRS filed a proof of claim in the bankruptcy case and appeared at numerous hearings.[118]    The

debtor filed a plan under which the brothers would contribute the property, which the plan

emphasized was not an estate asset, to the plan.[119]    The plan continued that the property would be

sold, with the proceeds paid first to administrative expenses, then to the debtor's creditors, and

then to the IRS as part of a settlement between the IRS and the brothers.[120]    The IRS received the

plan and notice of the confirmation hearing date, but declined to attend.[121]    The plan was

confirmed without objection and the IRS did not appeal the confirmation order.[122]

The debtor subsequently filed a motion to enforce the plan, seeking to use proceeds from

the sale of the property to pay attorney's fees as part of administrative expenses.[123]    The

---

[114] (Docket No. 211 at 11).
[115] *Galluzzo v. Comm'r of Internal Revenue*, 564 F. App'x at 657 (emphasis added).
[116] *In re Brothers Materials Ltd.*, 580 B.R. 475, 476 (S.D. Tex. 2017).
[117] *Id.* at 476.
[118] *Id.*
[119] *Id.* at 477.
[120] *Id.*
[121] *Id.*
[122] *Id.*
[123] *Id.*

bankruptcy court granted the motion over the IRS's objection, holding that the IRS was bound to the terms of the plan.[124]   The IRS, after unsuccessfully seeking reconsideration of the decision, appealed.[125]   The IRS argued that the plan should not have been confirmed either because the bankruptcy court lacked subject matter jurisdiction over the property, or in the alternative, because the bankruptcy court lacked jurisdiction to strip away the IRS's secured interest in the property.[126]

The district court rejected the IRS's arguments and affirmed the bankruptcy court's decision.   In so holding, the district court found that the IRS sought to "bootstrap a jurisdictional challenge to a confirmation order through an enforcement action."[127]   The district court held:

> Despite proper notice, the IRS did not contest the plan or file an appeal. . . . What caused this inaction, the Court does not know. But what the Court does know is that the IRS cannot now turn back the clock and attempt to undue its oversight. The time to challenge jurisdiction has passed. In the interest of finality. . . the IRS is now bound by the terms of the Plan.[128]

Like the IRS in *Brothers Materials*, Debtor is plainly trying to bootstrap a jurisdictional challenge to the Confirmation Order through an enforcement proceeding.   Debtor's time to challenge jurisdiction has passed and, in the interest of finality, he is bound by the terms of the Confirmation Order.[129]

Debtor's last-ditch effort to, as the Third Circuit put it, "dodge his tax debt" using a jurisdictional challenge is simply a red herring.[130]   Debtor knows the only way to avoid his obligations under the Confirmation Order, which include his agreement with the IRS as memorialized in the Stipulation and Order, is to void the Confirmation Order.   But no basis exists

---

[124] *Id.*
[125] *Id.*
[126] *Id.* at 477–78.
[127] *Id.* at 480.
[128] *Id.* at 482.
[129] *Galluzzo v. Comm'r of Internal Revenue*, 564 F. App'x at 657.
[130] *Id.*

24

here to do so.    Debtor attempts to absolve his failure to object to the IRS's claim pre-confirmation

by contending that parties cannot consent to subject matter jurisdiction where none exists.[131]

However, for the reasons already discussed, the Court does have subject matter jurisdiction over

the IRS's claim here.    Indeed, Debtor's failure to raise any jurisdictional issue until his post-

hearing briefing suggests he does not actually believe in this argument either.    The Court finds no

jurisdictional error, nor anything that would undermine the Confirmation Order.

The Court notes that the Plan provided that this Court retained jurisdiction to implement

the provisions of the Plan as provided under Section 1142, except that this reservation of

jurisdiction would not limit the exercise of jurisdiction by another court with competent

jurisdiction over the matter.[132]    Neither party appealed the Confirmation Order, and none of the

other courts Debtor brought this dispute to post-confirmation found they had jurisdiction.    Why?

Because this Court is the only court with jurisdiction to decide the dispute.

Lastly, Section 505 of the Bankruptcy Code further supports finding subject matter

jurisdiction here.    Section 505(a) expressly permits the bankruptcy court to "determine the amount

or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, *whether or not*

*previously assessed*, whether or not paid, and whether or not contested before and adjudicated by

a judicial or administrative tribunal of competent jurisdiction."[133]    The Third Circuit has

"consistently interpreted § 505(a) as a jurisdictional statute that confers on the bankruptcy court

authority to determine certain tax claims."[134]

---

[131] (Docket No. 211 at 11).

[132] (Docket No. 62 at 13).

[133] 11 U.S.C. § 505(a)(1) (emphasis added).

[134] *In re Custom Distribution Servs. Inc.*, 224 F.3d 235, 239–40 (3d Cir. 2000); *see In Quattrone Accountants, Inc. v. Internal Revenue Serv.*, 895 F.2d 921, 923 (3d Cir. 1990) ("when we review how the language and purpose of Section 505 has evolved, we conclude that Section 505 was intended to clarify the bankruptcy court's jurisdiction over tax claims").

Neither party specifically asked the Court to make a determination under Section 505. However, Section 505(a) makes clear that this Court has jurisdiction to determine the IRS's claim **whether or not the IRS previously assessed the tax**. Therefore, even if Debtor is correct that the IRS's assessment was invalid, this Court nevertheless has jurisdiction over the IRS's claim.

Debtor does not specifically allege that this Court lacked jurisdiction over the IRS's claim such that the Stipulation and Order is void. However, because the Court finds it had jurisdiction over the IRS's *claim*, there is no question that the Court had jurisdiction over the IRS's claim when it entered the Stipulation and Order. Therefore, the Court rejects Debtor's argument that the Confirmation Order and its allowance of the IRS's claim is void under Rule 60(b)(4) because this Court lacked jurisdiction over the IRS's claim. Likewise, and for the same reasons, the Court rejects Debtor's suggestion that the Confirmation Order and its allowance of the IRS's claim is void under Rule 60(b)(4) because the IRS never properly assessed the underlying the tax liabilities.

### B. The Bankruptcy Court's Authority

Debtor only challenges the Court's jurisdiction over the IRS claim, not the Court's *authority* to finally decide the IRS's claim. However, the analyses of these two distinct issues overlap and there should be no doubt about the Court's authority to hear and decide this matter.

"[A] bankruptcy court must make an initial determination that the claims before it fall within the purview of section 157 of Title 28."[135] Once the bankruptcy court has so found, Section 157 further divides the proceedings into two categories: (1) "core proceedings" arising under or arising in a bankruptcy case, including but not limited to the sixteen proceedings enumerated in Section 157(b)(2); and (2) non-core proceedings, defined as proceedings that are not core but are

---

[135] *Mullarkey*, 536 F.3d at 220–21; 28 U.S.C § 157(b)(3) ("The bankruptcy judge shall determine, on the judge's own motion or on timely motion of a party, whether a proceeding is a core proceeding under this subsection or is a proceeding that is otherwise related to a case under title 11.").

otherwise related to a bankruptcy case.[136]   As relevant here, the list of "core proceedings" includes

"matters concerning the administration of the estate"; "determinations of the validity, extent, or

priority of liens"; "confirmations of plans"; and "other proceedings affecting the liquidation of the

assets of the estate or the adjustment of the debtor-creditor or the equity security holder

relationship, except personal injury tort or wrongful death claims".[137]

Bankruptcy judges may hear and enter final judgments in all core proceedings that arise

under Title 11 or arise in a case under Title 11.[138]   If a proceeding is non-core, the bankruptcy

court may only submit proposed findings of fact and conclusions of law to the district court, which

reviews the case *de novo* and enters a final judgment.[139]   If the proceeding is neither core nor non-

core, it does not fall within the district court's subject matter jurisdiction under 28 U.S.C. § 1334

and neither the district court nor the bankruptcy judge may enter an order in the matter.[140]

Section 157(b)(2)'s designation of a proceeding as core does not end the analysis.[141]   In

*Stern v. Marshall*, the Supreme Court determined that although the Bankruptcy Code gave the

bankruptcy court authority to enter a final order on the debtor's tortious interference counterclaim

against the creditor, Article III of the United States Constitution nevertheless prevented the

bankruptcy court from entering a final order because the counterclaim was a common law cause

of action that neither derived from nor depended upon any agency regulatory regime.[142]   This kind

---

[136] 28 U.S.C. § 157(b)(1), (c)(1); *Mullarkey*, 536 F.3d at 221.
[137] 28 U.S.C. § 157(b)(2) (K), (L) and (O), which were the bases for jurisdiction pled by Debtor in his amended complaint, as well as (A), which was not pled in the amended complaint.   (*See* Adv. Pro. 06-02238-DHS, Docket No. 13, ¶ 2).
[138] *See Stern*, 564 U.S. at 474.
[139] *Id.* at 475.
[140] *In re Millennium Lab Holdings II, LLC*, 575 B.R. 252, 261 (Bankr. D. Del. 2017).
[141] *See Stern*, 564 U.S. at 482; *Millennium Lab*, 575 B.R. at 267.
[142] *See Stern*, 564 U.S. at 482, 488–94.

of claim, over which the bankruptcy court has statutory but not constitutional authority to enter a

final order, is sometimes referred to as a "*Stern* claim".[143]

In its analysis, the Supreme Court in *Stern* acknowledged that Congress could

constitutionally assign a category of cases involving "public rights" to non-Article III courts to

resolve.[144]   This "public rights" exception is limited to cases where the claim at issue derives from

a federal regulatory scheme, or where resolution of the claim by an expert government agency is

essential to a limited regulatory objective within the agency's authority.[145]   "In other words," the

Supreme Court explained, "what makes a right 'public' rather than private is that the right is

integrally related to particular federal government action."[146]   The question is not whether a

proceeding may have some bearing on a bankruptcy case; it is whether the action stems from the

bankruptcy itself or would necessarily be resolved in the claims allowance process.[147]

Neither the Supreme Court nor the Third Circuit has specifically addressed whether an IRS

tax claim falls within the public rights exception such that a bankruptcy court can finally adjudicate

the dispute.   However, at least two Courts of Appeal recognized—in discussing the jurisdiction

of the tax court—that the category of public rights includes matters of federal taxation, pre-

collection.[148]

---

[143] *See Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 1941–42 (2015) (describing a "*Stern* claim" as "a claim
designated for final adjudication in the bankruptcy court as a statutory matter, but prohibited from proceeding in that
way as a constitutional matter"); *Exec. Benefits Ins. Agency v. Arkison*, 134 S. Ct. 2165, 2170 (2014) (same).

[144] *Stern*, 564 U.S. at 485.

[145] *Id.* at 490; *In re Linear Elec. Co., Inc.*, 852 F.3d 313, 320 (3d Cir. 2017).

[146] *Stern*, 564 U.S. at 490–91.

[147] *Id.* at 499.

[148] *See Kuretski v. Comm'r of Internal Revenue Serv.*, 755 F.3d 929, 939 (D.C. Cir. 2014); *Samuels, Kramer & Co. v.
Comm'r of Internal Revenue*, 930 F.2d 975, 992 (2d Cir. 1991) ("The relationship between the government and
taxpayer plainly gives rise to public rights and we have no doubt that the resolution of such disputes can be relegated
to a non-Article III forum."), *abrogated on other grounds by Freytag v. Comm'r of Internal Revenue*, 501 U.S. 868,
892 (1991).

Even a determination that the bankruptcy court lacks constitutional authority to finally

decide a *Stern* claim does not end the analysis.   After *Stern*, the Supreme Court in *Wellness Int'l*

*Network, Ltd. v. Sharif* determined that litigants may consent to a bankruptcy court's constitutional

authority to enter final orders.[149]   In other words, a party may waive its right to litigate before an

Article III court.[150]   Such waiver must be knowing and voluntary, and can be express or

implied.[151]   *Wellness* also recognized that a party could forfeit its *Stern* argument, separate and

apart from waiving it, although the Court did not similarly articulate a standard for forfeiture.[152]

### 2.  Analysis

First, the Court finds that it clearly had statutory authority to adjudicate the IRS's claim.

Debtor explicitly alleged that the Adversary Proceeding was a core proceeding under 28 U.S.C. §

157(b)(2)(K) and (O).[153]   This Court agrees.

Second, in examining whether this Court had constitutional authority to adjudicate this

matter, one could follow the path already begun by the D.C. Circuit and the Second Circuit to find

that the IRS's claim falls within the public rights exception because it derives from a federal

regulatory scheme—the Internal Revenue Code—and is "integrally related to particular federal

---

[149] *Wellness*, 135 S. Ct. at 1939; *Millennium Lab*, 575 B.R. at 288.

[150] *See Wellness*, 135 S. Ct. at 1947–49.   Notably, the Supreme Court in *Stern* found the creditor-plaintiff waived any statutory argument that the bankruptcy court could not adjudicate his defamation claim through his course of conduct, which included filing a proof of claim and failing to object to the bankruptcy court's adjudication of the claim until more than two years after he filed it.   *See Stern*, 564 U.S. at 481–82.   However, the Supreme Court did not address whether the constitutional argument that the bankruptcy court could not adjudicate a claim could be waived until *Wellness*.

[151] *See Wellness*, 135 S. Ct. at 1947–48 (citing *Roell v. Withrow*, 538 U.S. 580, 598–90 (2003)); *Millennium Lab*, 575 B.R. at 288.

[152] *See Wellness*, 135 S. Ct. at 1949.   Waiver and forfeiture have different meanings even though they are commonly confused and often used interchangeably.   *Millennium Lab*, 575 B.R. at 288.   Specifically, forfeiture is the failure to timely assert a right, while waiver is the intentional relinquishment or abandonment of a known right.   *Kontrick v. Ryan*, 540 U.S. 443, 458 n.13 (2004); *Millennium Lab*, 575 B.R. at 288.

[153] (*See* Adv. Pro. 06-02238-DHS, Docket No. 13, ¶ 2).   Debtor also alleged that the Adversary Proceeding was a core proceeding under 28 U.S.C. § 157(b)(2)(F) ("proceedings to determine, avoid, or recover preferences"), which is does not apply to the instant dispute with the IRS.

government action."[154]    Moreover, the treatment of the IRS's claim would necessarily be resolved

in the claims allowance process.[155]    However, the Court need not decide whether the public rights

exception applies because even if the IRS's claim is a *Stern* claim, the parties' conduct and the

documents in the record demonstrate that this Court had the necessary authority to hear and finally

determine this dispute.    Specifically, this Court looks to the parties' consent, and Debtor's waiver

and forfeiture of any contrary position.

The parties chose to resolve the Adversary Proceeding through the Stipulation and

Order.[156]    The Stipulation and Order was incorporated into the Confirmation Order, which

Debtor's counsel in fact prepared and this Court entered.    Plan confirmation is one of the sixteen

proceedings listed in Section 157(b)(2) and is thus within the Court's core jurisdiction.[157]    The

bankruptcy court in *In re Charles St. African Methodist Episcopal Church of Boston* described

plan confirmation as "what chapter 11 is all about, [. . .] the quintessential bankruptcy matter."[158]

The *Charles St.* court continued that confirmation is:

> a unitary omnibus civil proceeding for the reorganization of all obligations of the
> debtor and disposition of all its assets. Confirmation of a plan is not an adjudication
> of the various disputes it touches upon . . . ; it is a total reorganization of the debtor's
> affairs in a manner available only in bankruptcy . . . . Accordingly, the confirmation
> of a plan . . . is a matter of "public rights" that, under *Stern,* Congress may
> constitutionally assign to a non-Article III adjudicator. . . . There is no constitutional
> infirmity in Congress's having provided, in 28 U.S.C. § 157(b)(1) and (b)(2)(L),
> that confirmation of a plan, including one of the variety here presented, is a

---

[154] *See Stern*, 564 U.S. at 490–91; *Kuretski*, 755 F.3d at 939; *Samuels, Kramer & Co.*, 930 F.2d at 992.

[155] *Stern*, 564 U.S. at 499.

[156] Although the Stipulation and Order did not require Court approval of the underlying settlement, bankruptcy court approval of settlements is a firmly established historical practice that pre-dates the Bankruptcy Code.    *In re Washington Mut., Inc.*, 461 B.R. 200, 214 (Bankr. D. Del. 2011), *vacated in part on other grounds*, No. 08-12229 MFW, 2012 WL 1563880 (Bankr. D. Del. Feb. 24, 2012).    The Court does not need jurisdiction over the underlying claims to approve a compromise of them.    *Id.* at 216.    Finally, under Section 1123(b)(3)(A) of the Bankruptcy Code, "a plan may . . . provide for the settlement or adjustment of any claim or interest belonging to the debtor or to the estate."    *Id.* at 215 (quoting 11 U.S.C. § 1123(b)(3)(A)).

[157] *Washington Mut.*, 461 B.R. at 215; *see* 28 U.S.C. § 157(b)(2)(L).

[158] *In re Charles St. African Methodist Episcopal Church of Boston*, 499 B.R. 66, 99 (Bankr. D. Mass. 2013).

proceeding that a bankruptcy judge may hear, determine, and enter appropriate orders and judgment on.[159]

Likewise, the *Millennium Lab* court observed:

> "There has never been any doubt about the constitutional authority of a nontenured judge to enter final orders in such matters, which are unique to bankruptcy cases. This has been true since the regime of the Bankruptcy Act and remains true today, even under *Marathon*, *Granfinanciera, S.A. v. Norberg* and *Stern v. Marshall*. This category of core proceedings has produced almost no litigation regarding bankruptcy court authority."[160]

In fact, the court in *Millennium Lab* reasoned that the *Stern* analysis does not apply to plan confirmation at all because confirmation of a plan is not a state law claim in any sense.[161]   The *Millennium Lab* court thus found it could enter a final order confirming the debtor's plan as a constitutional matter once it was satisfied as to the statutory framework.[162]   This Court finds *Charles St.* and *Millennium Labs* persuasive.   The operative proceeding obligating Debtor to pay the IRS is this Court's confirmation of Debtor's plan resulting in the Confirmation Order, which the Court had constitutional authority to enter and which incorporated the Stipulation and Order.

For the foregoing reasons, it is clear the bankruptcy court had both statutory and constitutional authority to enter the Confirmation Order, which fixed the treatment of the IRS's claim by reference to the Stipulation and Order.   If there was any question as to Debtor's entitlement to litigate the IRS's claim before an Article III judge, Debtor waived that argument numerous times.   As already discussed, the record demonstrates that Debtor explicitly and

---

[159] *Id.* at 99–100.

[160] *Millennium Lab*, 575 B.R. at 262 (quoting 1 COLLIER ON BANKRUPTCY ¶ 3.02[3] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.)).

[161] *See Millennium Lab*, 575 B.R. at 271.

[162] *Id.*

repeatedly consented to the bankruptcy court's authority to decide this dispute.[163]   Moreover,

Debtor never challenged this Court's authority to adjudicate the IRS's claim.   Indeed how could

he, since he repeatedly invoked this Court's jurisdiction?   Therefore, Debtor also forfeited any

right to challenge this Court's authority.[164]

Although Debtor does not specifically allege that this Court lacked authority to enter the

Stipulation and Order, because the Court finds it had statutory and constitutional authority to

finally adjudicate the IRS's *claim*, there is no question that the Court had such authority when it

entered the Stipulation and Order.

Ultimately, Debtor's consensual and voluntary agreement to pay the IRS—memorialized

in the Stipulation and Order and the Confirmation Order—overrides any alleged defect in service

of the notice of deficiency, which this Court has already found does not affect its jurisdiction over

the IRS's claim.   Now that the time has come to pay the claim, Debtor no longer likes the deal he

struck.   Debtor cannot take all the benefits of a confirmed Chapter 11 plan and then discard the

burdens.   To permit Debtor to prevail on such nonsense is antithetical to his original interest in

concluding his bankruptcy case and the finality established by the Stipulation and Order and

Confirmation Order.   Debtor made his bed and now must lie in it.

Accordingly, this Court finds that it had jurisdiction over the IRS's claim both when it

entered the Stipulation and Order and when it entered the Confirmation Order.

---

[163] Even if Debtor did not consent to the bankruptcy court's jurisdiction to issue a final order on this dispute, and the Court explicitly finds that he did, the Court could have found related-to jurisdiction and adjudicated this matter up to the point of final order.   At that point, the Court could have submitted a report and recommendation to the district court.

[164] *Millennium Lab*, 575 B.R. at 288, 294.

### C. *The Determination of the Amount of the IRS's Claim*

The IRS argues the Stipulation and Order establish that its claim is both valid and has been fixed in its amount.[165]   Debtor responds that the Stipulation and Order only fixed the priority of the IRS's claim, not the amount.[166]

Consent decrees, voluntarily entered into, are binding on the parties.[167]   "[B]y signing a consent decree, signatories make a 'free, calculated and deliberate choice to submit to an agreed upon decree rather than seek a more favorable litigated judgment.'"[168]   Courts interpret consent decrees with reference to traditional principles of contract interpretation and discern their scope by examining the language within the four corners of the document.[169]   "[R]esort to extrinsic evidence is permissible, but only when the decree itself is ambiguous, although circumstances surrounding its formation are always relevant to its meaning."[170]   The first task in interpreting a consent decree is to determine whether its terms unambiguously cover the dispute in question.[171] "In addressing the question of ambiguity, [the] focus remains on the contractual language itself, rather than on the parties' subjective understanding of the language."[172]

---

[165]  (Docket No. 198-1 at 3).

[166]  (Docket No. 200-1 at 3).

[167]  *See Green v. John H. Lewis & Co.*, 436 F.2d 389, 390 (3d Cir. 1970); *cf. Good v. Pa. R.R. Co.*, 384 F.2d 989 (3d Cir. 1957) (settlement agreement).

[168]  *Democratic Nat. Comm. v. Republican Nat. Comm.*, 673 F.3d 192, 201 (3d Cir. 2012) (quoting *U.S. Steel Corp. v. Fraternal Assoc. of Steel Haulers,* 601 F.2d 1269, 1274 (3d Cir. 1979)).

[169]  *See U.S. v. State of N.J.*, 194 F.3d 426, 430 (3d Cir. 1999).

[170]  *Id.*

[171]  *Id.*

[172]  *Id.*

Although the "Whereas" clauses in the Stipulation and Order focused on the dispute about the relative priorities of the IRS's and Local 282 Trust Funds' liens,[173] the Stipulation and Order's numbered paragraphs in fact determined the liens and their priority on the Ortley Beach Property between the IRS, the Local 282 Trust Funds, and the other defendants.    Specifically, the Stipulation and Order provided:

> 5. The IRS tax lien claim shall be reduced by $200,000 and the IRS shall retain its lien for any remaining balance on its secured claim after deduction of the lien claims of [certain other creditors] on the [Ortley Beach] Property, which shall be paid as a secured claim pursuant to any plan of reorganization or in any liquidation.[174]

This language demonstrates that the parties intended to fix not only the priority, but the amount of the IRS's claim—they merely chose to state it in terms of a mathematical calculation instead of a final dollar figure.    Indeed, the agreed-upon amount is easily calculated: the IRS filed an amended proof of claim listing a secured claim of $1,277,495.57.    Debtor filed an amended complaint seeking to fix the extent, validity, and priority of the IRS's claim.    The parties to the Adversary Proceeding then entered into the Stipulation and Order resolving the Adversary Proceeding.    The Stipulation and Order recognized the IRS's claim, established the priority of payment, and reduced the claim by $200,000.00.    Inferably, the IRS reduced its claim by $200,000 to settle the matter, and Debtor in turn gave up his ability to further challenge the IRS's claim.    These terms, and the other terms in the Stipulation and Order, were subsequently integrated and adopted into the

---

[173] The Stipulation and Order included the following "Whereas" clauses:
> WHEREAS, the [Local 282 Trust Funds] and the IRS respectively filed Answers to the Amended Complaint alleging that their liens were valid and there was, therefore, a dispute as to whether the IRS's or the [Local 282 Trust Funds'] lien has priority; and
> . . .
> WHEREAS, the IRS and the [Local 282 Trust Funds] wish to resolve the dispute over the priority of the liens on the [Ortley Beach] Property amicably.
(Adv. Pro. 06-02238-DHS, Docket No. 48 at 2).

[174] (*Id.* at 3).

Confirmation Order.   Simply put, $1,277,495.57 (from the IRS's amended proof of claim) minus

$200,000 (from the Stipulation and Order) equals $1,077,495.50.   Accordingly, the amount of the

IRS's secured claim was fixed at $1,077,495.50. at the time of confirmation, pursuant to the terms

of the Stipulation and Order and under the Confirmation Order.   If Debtor thought the calculation

was incorrect, he failed to show it.

Debtor contends that the Court should consider his counsel's statements at the confirmation

hearing, suggesting that the amount of the IRS's claim was still to be determined, in interpreting

the Stipulation and Order.[175]   The Court disagrees.   The parties' agreement was already

memorialized and recognized by the Court in the Stipulation and Order, which on its face

established both the validity and amount of the IRS's tax lien claim.   The Stipulation and Order,

expressly incorporated into the Confirmation Order, is unambiguous and left no loose ends.

Neither Order contemplated ongoing negotiations between Debtor and the IRS regarding the IRS's

claim.[176]   Indeed why would they, given the specific language in both Orders setting forth how

the IRS's claim would be treated?   Therefore, it is inappropriate to consider this extrinsic

evidence.

Next, Debtor argued that plan confirmation does not fix non-dischargeable tax liabilities,

citing *United States v. Gurwitch*.[177]   In *Gurwitch*, the debtor, a sole shareholder of two

corporations, filed for bankruptcy under Chapter 11 of the Bankruptcy Code.[178]   On his schedule

of liabilities, the debtor listed a withholding tax of $12,435.93 for one corporation.   In his

---

[175] (*See id.* at 4).

[176] One can surmise that if the IRS's claim not been resolved by the time of the confirmation hearing, the IRS would have appeared to object to confirmation, which would have delayed the confirmation of the plan.   Indeed, Debtor's counsel said at the confirmation hearing that Debtor did not want any further delay.   (Docket No. 207 at 8).   In any event, the IRS was not present at the confirmation hearing to respond to Debtor's counsel's statements about "ongoing discussions" with the IRS.   (*See id.* at 7).

[177] *See U.S. v. Gurwitch*, 794 F.2d 584 (11th Cir. 1986).

[178] *Id.* at 585.

disclosure statement, the debtor acknowledged that the IRS was seeking to collect a claim of $21,000.00 for the other corporation.[179]   The IRS filed a proof of claim for $7,756.41 for a combination of income and withholding tax liabilities.[180]   The plan allowed for payment of 100% of the IRS claim.[181]   After closure of the case, the IRS placed a lien on the debtor's real estate holdings for payment of the remaining tax claims.[182]   The debtor moved to reopen the case.[183] The bankruptcy court granted the debtor's motion and held that the amount of the IRS's claim was determined at confirmation and was binding on the parties.[184]   On appeal, the district court reversed, holding that the tax debt was non-dischargeable.[185]   The debtor appealed the district court's ruling on the basis of *res judicata*, arguing, among other things, that the confirmation order fixed the tax claim.[186]

The United States Court of Appeals for the Eleventh Circuit disagreed with the debtor and affirmed the district court's ruling.[187]   According to the Eleventh Circuit, the Bankruptcy Code provides under 11 U.S.C. § 1141(d)(2) that the confirmation of a plan of reorganization does not fix tax liabilities made non-dischargeable under 11 U.S.C. § 523.[188]   The Eleventh Circuit based this determination on the fact "that Congress has made the choice between collection of revenue and rehabilitation of the debtor by making it extremely difficult for a debtor to avoid payment of taxes under the Bankruptcy Code."[189]   The Eleventh Circuit therefore concluded that confirmation

---

[179] *Id.*
[180] *Id.*   The *Gurwitch* opinion does not indicate whether the IRS's proof of claim pertained to one or both corporations.
[181] *Id.*
[182] *Id.*
[183] *Id.*
[184] *Id.*
[185] *Id.*
[186] *Id.*
[187] *Id.* at 585–86.
[188] *Id.* at 585.
[189] *Id.* at 585–86.

of a plan of reorganization does not fix non-dischargeable tax debts when the IRS seeks to collect debts beyond those provided for in the confirmed plan.[190]

Debtor's reliance on *Gurwitch* is misplaced.   First, *Gurwitch* does not stand for the blanket assertion that plan confirmation never fixes non-dischargeable tax liabilities.   Second, Debtor's case is distinguishable from *Gurwitch* because Debtor consensually resolved the dispute through the Stipulation and Order fixing the amount of the IRS's claim.   Debtor's case is therefore more analogous to *In re Matunas*.[191]

In *Matunas*, the debtors filed for bankruptcy under Chapter 11 of the Bankruptcy Code to resolve the amount of the IRS's secured and unsecured tax claims.[192]   The plan provided that the IRS's priority and secured claims would be paid in full, while its general unsecured claim would not be paid.[193]   After the plan was confirmed, the debtors and the IRS negotiated the amount of pre-petition taxes and a payment schedule, which resulted in a stipulation agreement. [194] Specifically, the stipulation agreement determined the IRS had a $188,577.99 secured claim, which would be paid in full with interest.[195]   The stipulation agreement further provided that the IRS had an unsecured priority tax claim in the amount of $41,434.46, which would also be paid in full with interest.[196]   Lastly, the stipulation agreement acknowledged the plan did not provide for payment of the IRS's general unsecured claim.[197]

---

[190] *See id.* at 586.
[191] *See In re Matunas*, 261 B.R. 129 (Bankr. D.N.J. 2001) (Lyons, J.).
[192] *Id.* at 131.
[193] *Id.*
[194] *Id.*   It is not clear from the opinion whether the *Matunas* parties intentionally left the pre-petition tax amount and payment schedule open for resolution after confirmation.
[195] *Id.*
[196] *Id.*
[197] *Id.*

Within one year after confirmation, the debtors had not only paid the total amount of the

IRS's claim, but overpaid the amount set forth in the stipulation agreement by almost $35,000.[198]

The debtors moved to re-open the case to enforce the plan on the IRS, and the parties agreed the

IRS would issue a refund.[199]   However, before a consent order memorializing the parties'

agreement was submitted to the court, the IRS advised the debtors that the IRS had actually failed

to include one year of tax liability in its proof of claim, which was the basis for the stipulation

agreement.[200]

Opposing the debtors' motion to reopen, the IRS argued that its entire claim on any non-

dischargeable debt was preserved under Section 1142(d)(2), citing *In re Becker's Motor*

*Transport., Inc.*[201]   As the *Matunas* court summarized:

> In *Becker's*, the issue was whether a bankruptcy court had
> jurisdiction to reopen a chapter 11 proceeding to adjudicate the
> personal liability of a rehabilitated debtor for pre-petition penalties
> and post-petition interest on a nondischargeable tax debt that had
> been satisfied pursuant to a plan. The IRS filed proofs of claim
> against the debtors' estate for nondischargeable tax debts and pre-
> petition interest owed by the debtors. After all claims had been filed,
> the debtors proposed a joint plan, which was confirmed by the
> bankruptcy court. Pursuant to the plan, the tax indebtedness that had
> been claimed by the IRS was paid in full. Thereafter, however, the
> IRS sought to collect from the rehabilitated debtors monies for pre-
> petition penalties and post-petition interest on the satisfied tax debts,
> notice of which had not been provided earlier. The court held that
> although claims for pre-petition penalties on a tax debt are not
> allowable against a bankruptcy estate, debtors may be held
> personally liable for such penalties following the confirmation of a
> chapter 11 plan. Furthermore, the court stated that inasmuch as
> claims for pre-petition penalties and post-petition interest are
> nondischargeable, [] a reasonable debtor should expect that the IRS
> will seek to enforce such claims. Finally, the court stated that in
> submitting the proof of claim form, the IRS neither waived its right

---

[198] *Id.*

[199] *Id.*

[200] *Id.*

[201] *Id.* at 134–35 (citing *In re Becker's Motor Transport., Inc.*, 632 F.2d 242 (3d Cir. 1980)).

> to assert claims for pre-petition penalties and post-petition interest
> nor induced the debtors' mistaken assumption that they would not
> be held liable for debts of this character.[202]

The court in *Matunas* thus remained unpersuaded by the IRS's Section 1141(d)(2) argument, finding it failed to consider that the parties voluntarily entered into a stipulation agreement determining the amount the debtors owed to the IRS.[203]   The court noted that the stipulation agreement would be rendered meaningless under the IRS's view.[204]   The court further found that *Becker's* was distinguishable because in *Becker's*: (1) there was no stipulation agreement between the parties, and (2) there was no dispute as to the IRS's claim.[205]   Accordingly, the *Matunas* court held that *res judicata* barred the IRS from relitigating the claims it resolved in the stipulation agreement.[206]   The court further held that the stipulation agreement permanently fixed the debtors' pre-confirmation tax liability notwithstanding the IRS's omission of one year's tax liability in its proof of claim.[207]

Here, like in *Matunas*, Debtor and the IRS entered into the Stipulation and Order.   Just as the *Matunas* court found the stipulation agreement in that case permanently fixed the debtors' pre-confirmation tax liability notwithstanding the IRS's omission of one year's tax liability in its proof of claim, this Court finds the Stipulation and Order fixed the amount of Debtor's tax liability to the IRS notwithstanding Debtor's after-the-fact challenge to the IRS's delivery of the notice to deficiency.

---

[202] *Matunas*, 261 B.R. at 135 (citations omitted).
[203] *Id.*
[204] *Id.*
[205] *Id.*
[206] *Id.* at 135–36.
[207] *Id.* at 131, 135–36.

Although Debtor argues that a plan of reorganization does not fix non-dischargeable tax liabilities, it was not the Plan alone that fixed Debtor's tax liability here. Rather, it was the Stipulation and Order that memorialized the parties' agreement to the priority and amount of the IRS's claim, which was subsequently incorporated into the Confirmation Order. To hold otherwise would render the Stipulation and Order meaningless.

### D. *Adequacy of Proceeding to Determine Tax Liability*

Debtor argues that the bankruptcy court must hold "distinct proceedings" to determine a debtor's tax liability, such as on an objection to the amended proof of claim or a motion to determine the tax liability under 11 U.S.C. § 505, citing the Court of Appeals for the Fifth Circuit in *In re Taylor*.[208] The IRS, on the other hand, argues that *res judicata* applies even without a separate proceeding to challenge or determine the amount of the IRS's claim.[209]

Pursuant to Section 505, the bankruptcy court "may determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction."[210] The Fifth Circuit observed in *Taylor* that "the normal procedure to determine the amount of a tax debt is for the debtor (or the IRS) to file a motion requesting that the bankruptcy court make the determination under 11 U.S.C. § 505."[211]

A debtor may also object to the proof of claim.[212] Upon filing, a creditor's proof of claim is deemed allowed unless a party in interest objects.[213] If an objection is filed, the court must

---

[208] (Docket No. 200-1 at 7–8) (citing *In re Taylor*, 132 F.3d 256 (5th Cir. 1998)).
[209] (Docket No. 201 at 5).
[210] 11 U.S.C. § 505(a)(1).
[211] *Taylor*, 132 F.3d at 262.
[212] *See* Fed. R. Bankr. P. 3007; *see also* 11 U.S.C. § 502(a).
[213] 11 U.S.C. § 502(a).

determine the amount of the claim to be allowed after notice and a hearing.[214]   To the extent the

proof of claim is executed and filed in accordance with the Federal Rules of Bankruptcy Procedure,

it is "prima facie evidence of the validity and amount of the claim."[215]   "[A] proof of claim that

alleges sufficient facts to support liability satisfies the claimant's initial obligation to proceed, after

which the burden shifts to the objector to produce sufficient evidence to negate the prima facie

validity of the filed claim."[216]   If the validity of the claim is rebutted by a debtor and/or a party in

interest, the burden shifts to the claimant to prove the validity of the claim by a preponderance of

the evidence.[217]   Nevertheless, the claimant always has the burden of persuasion in a contested

proceeding.[218]

In *Taylor*, the Chapter 11 debtor was the president and manager of a corporation that failed

to remit withholding taxes to the IRS.[219]   As a responsible person of the corporation, the debtor

was liable for a penalty in the amount of the taxes the corporation failed to pay.[220]   However, the

IRS never filed a proof of claim for those withholding taxes in the debtor's bankruptcy case.[221]

In his plan, the debtor proposed to treat the IRS's class as follows: "[p]ursuant to 11 U.S.C. § 505,

Debtor is not indebted for any claims in this class.   All such claims, whether or not now asserted,

are discharged without receiving payment."[222]   The debtor's plan was subsequently confirmed.[223]

---

[214] 11 U.S.C. § 502(b).

[215] Fed. R. Bankr. P. 3001(f).

[216] *In re Lampe*, 665 F.3d 506, 514 (3d Cir. 2011) (citing *In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173–74 (3d Cir. 1992)).

[217] *Allegheny Int'l*, 954 F.2d at 174 (citing *In re WHET, Inc.*, 33 B.R. 424, 437 (Bankr. D. Mass. 1983)); *In re Alessi*, No. 11-25686 (MBK), 2012 WL 1072214, *1 (Bankr. D.N.J. Mar. 28, 2012) (Kaplan, J.).

[218] *Allegheny Int'l*, 954 F.2d at 173–74.

[219] *Taylor*, 132 F.3d at 258.

[220] *Id.*

[221] *Id.*   In *Taylor*, the IRS did file a proof of claim for personal income taxes; however, it subsequently withdrew the claim.

[222] *Id.* at 259.

[223] *Id.*

Later that year, the IRS notified the debtor that a penalty would be assessed against him for the withholding taxes.[224]   The debtor initiated a proceeding in the bankruptcy court seeking a declaratory judgment that he was not indebted to the IRS for the withholding tax penalty.   On cross-motions for summary judgment, the court held that the IRS could not proceed against the debtor for the penalty.[225]   The district court affirmed.[226]

On appeal to the Fifth Circuit, the debtor argued, among other things, that *res judicata* barred the IRS from proceeding against him.[227]   The Fifth Circuit nevertheless reversed.[228]   The court held that a confirmation of a plan does not itself invoke the tax determination process.[229] However, the court explicitly declined to hold that "a bankruptcy court must have distinct proceedings in order to determine a tax debt or that the court cannot combine a § 505 hearing and a plan confirmation hearing or address a tax debt in another manner."[230]

It is clear that *Taylor* does not support Debtor's proposition that the bankruptcy court must hold "distinct proceedings" to determine a debtor's tax liability.   Moreover, the facts of this case are distinguishable from *Taylor*.   In *Taylor*, the IRS did not participate in the bankruptcy process and the confirmed plan was the sole basis for determining the tax debt.   Here, the IRS actively participated in Debtor's bankruptcy case and the tax debt was actually negotiated and determined by an agreement between Debtor and the IRS, memorialized in the Stipulation and Order and later incorporated into the Confirmation Order.

---

[224] *Id.*
[225] *Id.*
[226] *Id.*
[227] *Id.* at 260.
[228] *Id.* at 259–60.
[229] *Id.* at 263.
[230] *Id.*

42

The Plan specifically defined an allowed claim as one for which a proof of claim was timely filed.[231]  The IRS timely filed its amended proof of claim, and Debtor conceded that he never objected to it.[232]  Therefore, the IRS's claim was deemed allowed.[233]  The Plan expressly addressed the IRS's secured claim.[234]  The only modification to the IRS's amended proof of claim was set forth in the Stipulation and Order.  Therefore, the record makes clear that, at the time of the Confirmation Order, the IRS's claim was an allowed claim in the amount of the amended proof of claim minus the $200,000 set forth in the Stipulation and Order.

Instead of entering into the Stipulation and Order, Debtor could have continued to prosecute the Adversary Proceeding.  Or he could have filed an objection to the IRS's amended proof of claim and engaged in the burden-shifting procedure under Federal Rule of Bankruptcy Procedure 3001.  Debtor may have even won, had he chosen a litigation strategy.  But no one will ever know, because Debtor instead chose settlement—a process that is widely encouraged. Debtor cannot agree to the amount of the IRS's claim, receive the benefits of the agreement, and then much, *much* later, cry that the deal is void because there was no hearing to determine the amount of the claim.

In addition, Section 505 only provides that the Court *may* determine the amount of a tax. It does not *require* the Court to determine the amount of the tax, whether by hearing or otherwise. Here, no one asked the Court to determine the amount of the IRS's claim under Section 505. Debtor commenced the Adversary Proceeding to determine the amount of the IRS's claim, but he mooted the need for a hearing by agreeing to the amount of the IRS's claim in the Stipulation and

---

[231] (Docket No. 62 at 2).
[232] (Proof of Claim No. 11-1); (Docket No. 211 at 11).
[233] 11 U.S.C. § 502(a).
[234] (*See* Docket No. 62 at 10).

Order.   It is evident to this Court that Debtor wants to keep the advantages of the agreement with the IRS, not the least of which is it enabled him to confirm his Plan and exit bankruptcy, but at the same time deprive the IRS of the benefit of its bargain.   Permitting such conduct is not only inequitable, but contrary to the law.

To be clear, the Court does not find, nor does it need to, that the IRS *proved* the validity and amount of its claim.   Instead, the IRS's claim was consensually established by the terms of the Stipulation and Order, which was subsequently incorporated into the Confirmation Order. The Confirmation Order was never appealed.   For these reasons, Debtor remains bound by his agreement to pay the IRS's claim.

### E.   *Res Judicata and the Confirmation Order*

The IRS argues that the Confirmation Order is *res judicata* as to the amount and validity of the IRS's claim and bars Debtor from challenging the amount.   Debtor argues that there was no determination of the IRS's tax claim on the merits.   This Court again disagrees with Debtor.

The doctrine of *res judicata* is fully applicable in bankruptcy cases.[235]   It bars not only claims that were brought in a previous action, but also claims that could have been brought.[236]   It has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation."[237]   Three circumstances must be present for *res judicata* to apply: (1) a final judgment on the merits in a prior suit, involving (2) the same parties or their privies, and (3) a subsequent suit based on the same cause of action.[238]   A cause of action should be barred only where "the

---

[235] *In re Target Indus., Inc.*, 328 B.R. 99, 115 (Bankr. D.N.J. 2005) (Gambardella, J.).

[236] *Mullarkey*, 536 F.3d at 225 (citing *Post v. Hartford Ins. Co.*, 501 F.3d 154, 169 (3d Cir. 2007), *overruled on other grounds by Estate of Schwing v. The Lilly Health Plan*, 562 F.3d 522, 525 (3d Cir. 2009).

[237] *Mullarkey*, 536 F.3d at 225 (quoting *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 (1979)).

[238] *Mullarkey*, 536 F.3d at 225; *Lubrizol Corp. v. Exxon Corp.*, 929 F.2d 960, 963 (3d Cir. 1991).

factual underpinnings, theory of the case, and relief sought against the parties to the proceeding

are so close to a claim actually litigated in the bankruptcy that it would be unreasonable not to

have brought them both at the same time in the bankruptcy forum."[239]

Confirmed Chapter 11 plans, confirmation orders, and stipulations are given *res judicata*

effect.   Under Section 1141 of the Bankruptcy Code, "'[o]nce confirmed, a Chapter 11 plan acts

as both a contract which binds the parties and as an order of the bankruptcy court.'"[240]   As a final

judgment on the merits, confirmation precludes re-litigation of any issue actually litigated by the

parties, any issue necessarily determined by the confirmation order, and all issues that could have

been decided at the confirmation hearing.[241]   A confirmation order is enforceable and binding on

all parties that have actual notice and fail to object or timely appeal.[242]   A consent decree is

likewise a final judgment on the merits and accorded *res judicata* effect except where there has

been an express reservation of rights.[243]   Stipulation agreements that fix a debtor's non-

dischargeable tax liability are *res judicata* and permanently fix the amount of the debt.[244]

The IRS's amended proof of claim in this case asserted Debtor owed $1,277,495.57 for tax

years 1999, 2000, 2001 and 2003.[245]   Thereafter, Debtor initiated the Adversary Proceeding

against the several creditors including the IRS to determine the validity, priority and extent of their

claims.   To resolve the Adversary Proceeding, the parties executed the Stipulation and Order

---

[239] *Target Indus.*, 328 B.R. at 116 (quoting *E. Minerals & Chems. Co. v. Mahan*, 225 F.3d 330, 337–38 (3d Cir. 2000)).

[240] *In re Greater Am. Land Resources, Inc.*, 452 B.R. 532, 538 (Bankr. D.N.J. 2011) (Winfield, J.) (quoting *JCB, Inc. v. Union Planters Bank, NA*, 539 F.3d 862, 870 (8th Cir. 2008)) (edits in original).

[241] *See Bullard v. Blue Hills Bank*, 135 S. Ct. 1686, 1692 (2015) (citing 8 Collier ¶ 1327.02[1][c], at 1327–6); *Donaldson v. Bernstein*, 104 F.3d 547, 554 (3d Cir. 1997) (quoting *In re Szostek*, 886 F.2d 1405, 1408 (3d Cir. 1989)). *Greater Am. Land Resources*, 452 B.R. at 538.

[242] *Espinosa*, 559 U.S. at 275; *see Brothers Materials*, 580 B.R. at 482.

[243] *Munoz*, 323 F. App'x at 187; *U.S. v. Athlone Indus., Inc.*, 746 F.2d 977, 983 n.5 (3d Cir. 1984) (citing *Interdynamics, Inc. v. Firma Wolf*, 653 F.2d 93, 96–97 (3d Cir. 1981)).

[244] *See Matunas*, 261 B.R. at 135–36.

[245] (Proof of Claim No. 11-1).

pursuant to which the IRS would reduce its tax lien claim by $200,000.   The Confirmation Order subsequently incorporated the Stipulation and Order.

The Stipulation and Order contained no express reservation of rights that would allow Debtor to further challenge the IRS's claim.   Debtor's assertion that an express reservation of rights is not necessary is squarely at odds with Third Circuit law holding that consent decrees are generally treated as final judgments on the merits and accorded *res judicata* effect absent an *express* reservation of rights.[246]   The Stipulation and Order is a final judgment on the merits, which satisfies the first *res judicata* element.[247]   Next, both the Adversary Proceeding and the instant matter involve Debtor and the IRS, so the second *res judicata* element is satisfied.   Debtor cites no authority for the proposition that all parties present in the first proceeding must be present in the subsequent proceeding for *res judicata* to apply.   Finally, Debtor's opposition to the Motion to Enforce Plan and Confirmation Order seeks to disallow the IRS's claim, which was already the subject of the Adversary Proceeding and resolved on consent in the Stipulation and Order. Therefore, the third *res judicata* element is satisfied.   Accordingly, the Stipulation and Order is *res judicata* as to the priority, amount and validity of the IRS's claim.

Crucially, the Stipulation and Order was incorporated into the Confirmation Order. Debtor never objected to the Confirmation Order, nor appealed it.   In rejecting the IRS's jurisdictional challenge in *Brothers Materials*, the district court found that:

> Despite proper notice, the IRS did not contest the plan or file an appeal. . . . What caused this inaction, the Court does not know. But what the Court does know is that the IRS cannot now turn back the clock and attempt to undue its oversight. The time to challenge

---

[246] *See Munoz*, 323 F. App'x at 187; *Athlone Indus.*, 746 F.2d at 983 n.5 (citing *Interdynamics*, 653 F.2d 96–97).

[247] A party can seek reconsideration of an order allowing a claim against the estate.   *See* 11 U.S.C. § 502(j); Fed. R. Bankr. P. 3008.   However, Debtor never moved for reconsideration of the Stipulation and Order.

> jurisdiction has passed. In the interest of finality. . . the IRS is now
> bound by the terms of the Plan.[248]

The same analysis applies here—Debtor is bound by the treatment of the IRS's claim set forth in

the Stipulation and Order and the Confirmation Order.

It should be noted that, while the Plan provided a mechanism by which Debtor could object

to claims, aptly titled "Procedures for Resolving Contested Claims," it expressly does not apply to

"Claims . . . deemed Allowed in the Plan."[249]    In the Plan, the term "Allowed," with regard to

claims, was expressly defined as a "Claim against . . . the debtor, proof of which was filed on or

before the date designated by the Bankruptcy Court as the last date for filing proofs of claim . . .

against such debtor . . . ."[250]    The IRS filed a timely proof of claim.    The Plan expressly

addressed the IRS's claim.[251]    Therefore, the Plan's procedure for resolving contested claims

clearly does not apply here.

The Court is also unpersuaded by Debtor's argument that he "should not be precluded from

challenging the [IRS's] claim where there were no factual findings as to whether the tax assessment

was enforceable", citing IRS Revenue Ruling 2006-16.[252]    In Revenue Ruling 2006-16, the

married debtors filed a joint tax return.    The IRS subsequently determined that the joint return

substantially understated the one spouse's income.    The IRS issued a notice of deficiency, and the

debtors defaulted.    The IRS then assessed income tax deficiencies against the debtors, for which

they were jointly and severally liable.    The debtors subsequently filed a joint Chapter 7

bankruptcy petition, and the IRS filed a proof of claim asserting an unsecured priority claim for

---

[248] *Brothers Materials*, 580 B.R. at 482.

[249] (*See* Docket No. 62 at 2).

[250] (*Id.*)

[251] (*See* Docket No. 62 at 10).

[252] (Docket No. 200-1 at 8).

the deficiency.   No one objected to the proof of claim or asked the bankruptcy court to adjudicate the merits of the tax liability under Section 505 of the Bankruptcy Code.   After the bankruptcy case closed, the debtors separated and the non-deficient spouse requested relief from joint and several liability under Section 6015 of the Internal Revenue Code.   Revenue Ruling 2006-16 concluded that the joint bankruptcy case did not preclude the non-deficient spouse's request.[253]

Revenue Ruling 2006-16 is easily distinguished from Debtor's case.   Unlike the joint debtor in Revenue Ruling 2006-16, Debtor *did* challenge the IRS's amended proof of claim.   In addition, the parties here *agreed* to the amount and priority of the IRS's claim in the Stipulation and Order.   As already established, the Stipulation and Order is *res judicata* as to the priority, amount and validity of the IRS's claim.   Thus, unlike Revenue Ruling 2006-16, there was a determination of the tax liability here.

At oral argument, Debtor also argued that *res judicata* cannot apply here.   Specifically, Debtor asserted that *res judicata* is only binding if it binds all parties.[254]   Debtor further asserted that because Mrs. Galluzzo was jointly liable on Debtor's tax liability and successfully challenged her liability, *res judicata* cannot bar Debtor from challenging the tax lien.[255]   The IRS concedes that it abated Mrs. Galluzzo's tax liability.   However, the Court does not see how this is relevant to whether Debtor's agreement to the treatment of the IRS's claim in the Stipulation and Order, incorporated into the Confirmation Order, precludes Debtor from contesting the amount of the IRS's lien now.   Although the Court directed the parties to brief the issue, Debtor failed to do so. As far as this Court can see, whatever relief Mrs. Galluzzo received is hers and hers alone.   She did not file for bankruptcy and is free to pursue whatever remedies are available to her.   Debtor,

---

[253] *See* Rev. Rul. 2006-16, 2006-1 C.B. 694.
[254] (Docket No. 209 at 38–39).
[255] (*Id.*)

on the other hand, invoked the jurisdiction of the bankruptcy court and asked the Court to adjudicate the IRS's claim.   Debtor made an agreement with the IRS, which was memorialized in the Stipulation and Order and then incorporated into the Confirmation Order.   As the Court already found, the Stipulation and Order is *res judicata* on the amount of the IRS's claim.

Finally, the Court is unpersuaded by Debtor's circular argument, raised for the first time in his post-hearing brief, that *res judicata* bars the IRS's from making a *res judicata* argument here. Specifically, Debtor argued that "[t]he Third Circuit ruled that the confirmed Plan had no res judicata effect in the Tax Court.   Therefore, the matter cannot be re-litigated in this Court."[256] Debtor's interpretation of the Third Circuit's decision is wrong.   The Third Circuit did not rule that the Confirmation Order had no *res judicata* effect.   Rather, the Third Circuit dealt only with whether the tax court erred by independently analyzing its subject matter jurisdiction, or lack thereof, over the dispute.[257]   In fact, the Third Circuit observed that "a party's invocation of res judicata, *even if well-founded*, cannot prevent the Tax Court from fully assessing its own subject matter jurisdiction."[258]   The IRS is not challenging the tax court's conclusion that it lacked jurisdiction over the dispute.   So the IRS's invocation of *res judicata* here cannot be, as Debtor ironically contends, "another bite at the apple".[259]   Thus, *res judicata* does not bar the IRS from arguing that the Confirmation Order is *res judicata* on the amount and validity of the IRS's claim. Instead, as already established, *res judicata* bars Debtor from challenging the amount of the IRS's claim as fixed by the Stipulation and Order and the Confirmation Order.

## CONCLUSION

---

[256] (Docket No. 211 at 3).
[257] *See Galluzzo v. Comm'r of Internal Revenue*, 564 F. App'x at 660.
[258] *Id.* (emphasis added).
[259] (*See* Docket No. 211 at 7).

This case's post-confirmation history has clearly been tortuous. From each adverse decision Debtor received in his efforts to avoid his obligation to the IRS under the Confirmation Order, Debtor found some helpful dicta and ran to the next court with it, hoping for a better result. Indeed, Debtor's multiple challenges to the IRS's claim, though unsuccessful, accomplished his goal of staving off his obligation to pay the IRS. However, the buck must stop here, in the very court that entered the order Debtor tried for so many years to undo. It is telling that Debtor came to this Court only after the IRS forced him by filing the Motion to Enforce Plan and Confirmation Order, and only after Debtor attempted his arguments in almost every other federal court. It suggests that Debtor knew his chances were slim here and hoped some other court would see it differently. If that is the case, Debtor was right. Debtor is not entitled to the relief he seeks.

For the foregoing reasons, the IRS's Motion to Enforce Plan and Confirmation Order is GRANTED. An appropriate Order will enter.

Dated: August 14, 2018

*Stacey L. Meisel*

Honorable Stacey L. Meisel
United States Bankruptcy Judge